## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**SEDRICK SIMMS**                                    **CIVIL ACTION**

**VERSUS**                                           **NO. 18-6748**

**DARREL VANNOY, WARDEN**                            **SECTION "B" (2)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I.    FEDERAL PROCEDURAL BACKGROUND

On July 17, 2018, the clerk of this court filed Sedrick Simms's petition for federal habeas corpus petition in which he asserted the following grounds for relief:[2] (1) The state trial court erred when it failed to grant the motion for mistrial based on improper

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

[2] Rec. Doc. No. 1.

argument by the State during rebuttal argument. (2) The State committed prosecutorial misconduct when the prosecutor made improper comments about petitioner's failure to testify. (3) The State engaged in prosecutorial misconduct and violated his right to a fair trial when the prosecutor breached the stipulation and made reference to a prior crime. (4) He received ineffective assistance of trial counsel when counsel failed to (a) call important witnesses to testify at trial; (b) move for a mistrial based on the prosecutor's improper reference to other crimes; (c) contemporaneously object to the trial court's failure to rule on an outstanding motion for mistrial; and (d) move for severance of the charges. (5) He received ineffective assistance of counsel on appeal because counsel failed to assert viable, meritorious issues on appeal and failed to argue insufficient evidence to support the felon in possession conviction.

The State filed a response in opposition to Simms's petition, asserting that Simms failed to exhaust state court review of the second and third claims of prosecutorial misconduct, and that Simms may no longer have the ability under state procedural law to seek review of those claims.[3] Alternatively, the State argued that Simms is not entitled to relief on the merits of his claims.

On January 17, 2019, I issued a report and recommendation in which I recommended that Simms's federal habeas corpus petition be dismissed without prejudice for failure to exhaust state court review of his second and third claims of

---

[3]Rec. Doc. No. 11.

prosecutorial misconduct.[4] Simms moved for leave to amend his federal petition to exclude the unexhausted claims and proceed only with the exhausted claims identified in my prior report and recommendation.[5] The district judge granted the motion on February 13, 2019, and referred the matter to me for consideration of the remaining exhausted issues.[6]

Based on my prior report, Simms's amended federal petition, the district judge's order and the state court records, the claims exhausted in the state courts are Simms's claims that (a) the state trial court erred when it denied the motion for mistrial and (b) he received ineffective assistance of trial and appellate counsel.

## II.    STATE COURT FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts and procedural history of the underlying state criminal proceedings from my prior report are repeated here for ease of reference.

Simms is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[7] On February 28, 2012, he was charged by bill of information in Orleans Parish with one count of armed robbery and one count of possession of a weapon

---

[4]Rec. Doc. No. 12.

[5]Rec. Doc. No. 13.

[6]Rec. Doc. No. 14.

[7]Rec. Doc. No. 1.

by a convicted felon.[8] The Louisiana Fourth Circuit Court of Appeal summarized the

facts established at trial in relevant part as follows:

> In the early morning hours of January 2, 2012, after an evening of celebrating with friends on Bourbon Street, Dana Currington ("victim"), was driven by a friend to her residence at 524 Austerlitz Street. When she arrived there she discovered that the screen door was locked; she knocked on the window to awaken her boyfriend who was asleep inside. She then waved to her friend acknowledging that she was safe. Immediately thereafter, she was accosted by Sedrick Simms, the defendant, who was armed with a 9 millimeter gun. He demanded that she give him her money. He took her purse; he fled down Austerlitz Street toward Annunciation Street where the victim saw him enter the side of a green house in the 3900 block of Annunciation Street. The victim called 911 to report the robbery. At around 5:30–6:00 a.m., New Orleans Police Department ("NOPD") Officer Carlos Amador, arrived at the scene and took the victim's statement before returning to headquarters.
>
> At around 8:00 a.m., that same morning, Darleen Currington (victim's mother), walked down to the green house on Annunciation Street where she confronted Ms. Wells, who lived there, concerning the identity of the defendant. Around 2:30–3:00 p.m., the she made a 911 call with information as to the defendant's identity. While she and the victim were waiting for the NOPD to arrive, they notice the defendant walking down the street with his girlfriend and pushing a baby stroller. He was wearing black pants and a black "Dickie" shirt. The victim once again called 911.
>
> Officer Waterman was the first to arrive to the scene in the 3900 block of Annunciation Street. As he approached the defendant and his girlfriend, the defendant took off running toward the 3700 block of Annunciation. Officer Waterman chased the defendant in a foot pursuit, but ultimately lost sight of him. He immediately set up a perimeter in the area encompassing the defendant within a 6–7 block radius. Soon thereafter, the K-9 unit arrived and the manhunt continued until the K-9 alerted to a house at 617 Peniston Street. Officer Trey Pichon climbed the roof of the house and discovered the defendant. The only thing discovered, pursuant to a pat down search of the defendant, was a 9 millimeter unspent cartridge. The defendant was no longer wearing the black "Dickie" shirt, that he had

---

[8] St. Rec. Vol. 1 of 8, Bill of Information, 2/28/12.

4

discarded earlier and was later located at the scene. The defendant was arrested.

[. . .]

Prior to testimony, the parties stipulated that the defendant was previously convicted of discharging a firearm where it was foreseeable that death or greater bodily harm would be committed in the 24th Judicial District Court for Jefferson Parish, Case No. 2006-3442, which was the predicate offense for the felony possession of a firearm charge. [. . .]

State v. Simms, 143 So.3d 1258, 1261–67 (La. App. 4th Cir. 2014); State Record Volume 6 of 8, Louisiana Fourth Circuit Opinion, 2013-KA-0575, pp. 3–13, June 18, 2014.

Simms was tried before a jury on August 20 and 21, 2012, and found guilty as charged on both counts.[9] On August 22, 2012, the State filed a multiple bill charging Simms as a second offender.[10] At a December 12, 2012, hearing, the state trial court denied Simms's motions for a new trial and post-verdict judgment of acquittal.[11] On January 7, 2013, the state trial court sentenced Simms to 30 years in prison for armed robbery and 20 years in prison for possession of a firearm by a convicted felon, with both sentences to be served without benefit of parole, probation or suspension of sentence.[12]

---

[9]St. Rec. Vol. 1 of 8, Trial Minutes, 8/20/12; Trial Minutes, 8/21/12; Amended Minute Entry, 8/21/12; St. Rec. Vol. 6 of 8, Trial Transcript, 8/20/12; Trial Transcript, 8/21/12; St. Rec. Vol. 7 of 8, Trial Transcript (continued), 8/21/12.

[10]St. Rec. Vol. 1 of 8, Multiple Bill, 8/22/12.

[11]St. Rec. Vol. 1 of 8, Minute Entry, 12/12/12; Motion for New Trial, 11/5/12; Motion for New Trial, 12/3/12.

[12]St. Rec. Vol. 1 of 8, Sentencing Minutes, 1/7/13; Amended Sentencing Minutes, 3/8/13.

At an April 12, 2013 hearing, the state trial court denied Simms's motion in arrest of judgment alleging unconstitutional sentencing laws.[13] That same day, the court adjudicated Simms a second felony offender as to count one, vacated the prior sentence and resentenced him for the armed robbery conviction as a multiple offender to 70 years in prison without benefit of parole, probation or suspension of sentence.[14] The court also denied Simms's motion to reconsider the sentence.[15]

On direct appeal to the Louisiana Fourth Circuit, Simms's appointed counsel asserted that the trial court erred when it denied the motion for mistrial alleging improper statements made during the State's rebuttal argument.[16] The Louisiana Fourth Circuit affirmed Simms's conviction on June 18, 2014, finding no merit in the claim.[17] The appellate court, however, found two errors patent in the sentencing proceedings.

The court held that the trial court improperly failed to impose the mandatory fine as part of the sentence on the felon in possession count and remanded the matter for imposition of the fine. In addition, the appellate court held that the trial court erred when

---

[13]St. Rec. Vol. 1 of 8, Minute Entry, 4/12/13; Minute Entry, 4/4/13; Motion in Arrest of Judgment, 4/4/13; St. Rec. Vol. 6 of 8, Multiple Bill Hearing Transcript, 4/12/13.

[14]St. Rec. Vol. 1 of 8, Multiple Bill Hearing Minutes, 4/12/13; St. Rec. Vol. 6 of 8, Multiple Bill Hearing Transcript, 4/12/13.

[15]St. Rec. Vol. 1 of 8, Multiple Bill Hearing Minutes, 4/12/13; Motion to Reconsider Sentence, 4/12/13; St. Rec. Vol. 6 of 8, Multiple Bill Hearing Transcript, 4/12/13.

[16]St. Rec. Vol. 1 of 8, Appeal Brief, 2013-KA-0575, 7/8/13. Simms was granted leave to file a pro se supplemental brief, but no brief was filed. St. Rec. Vol. 6 of 8, Motion to File, 9/20/13.

[17]Simms, 143 So.3d at 1258; St. Rec. Vol. 6 of 8, 4th Cir. Opinion, 2013-KA-0575, 6/18/14.

it did not indicate whether the 70-year multiple offender sentence for armed robbery included the mandatory, consecutive five-year penalty for a crime committed with a firearm. The court vacated that sentence and remanded the matter for clarification and/or resentencing under the multiple offender provisions.

On December 15, 2014, the trial court resentenced Simms for the armed robbery conviction as a second felony offender to serve 65 years in prison and a consecutive firearm penalty term of 5 years, each without benefit of parole, probation or suspension of sentence.[18]

The Louisiana Supreme Court denied Simms's related writ application on February 27, 2015, without stated reasons.[19] His conviction and sentences became final ninety (90) days later, on May 28, 2015, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filling for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

---

[18]St. Rec. Vol. 1 of 8, Multiple Bill Sentencing, 12/15/14; St. Rec. Vol. 8 of 8, Resentencing Transcript, 12/15/14. The record does not reflect correction of the fine penalty in connection with the felon in possession count.

[19]State v. Simms, 160 So.3d 963 (La. 2015); St. Rec. Vol. 8 of 8, La. S. Ct. Order, 2014-KO-1542, 2/27/15; La. S. Ct. Writ Application, 14-KO-1542, 7/21/14 (dated 7/14/14).

On March 7, 2016, Simms signed and submitted an application for post-conviction relief to the state trial court asserting four grounds for relief:[20] (1) The State engaged in prosecutorial misconduct when the prosecutor made improper comments about petitioner's failure to testify. (2) The State committed prosecutorial misconduct and violated his right to a fair trial when the prosecutor breached the stipulation not to mention evidence of other crimes. (3) He received ineffective assistance of trial counsel when counsel failed to (a) call important witnesses to testify; (b) move for a mistrial based on the prosecutor's improper references to other crimes; (c) contemporaneously object to the trial court's failure to rule on an outstanding motion for mistrial; and (d) move for severance of the charges. (4) He received ineffective assistance of counsel on appeal because counsel failed to assert viable, meritorious claims on appeal, including insufficient evidence to support the felon in possession conviction. Simms filed a supplemental application asserting additional arguments in support of these same grounds for relief.[21]

On November 18, 2016, the state trial court denied relief, finding the first claim repetitious of the arguments addressed on direct appeal. The court also found no merit in Simms's remaining claims under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).[22]

---

[20]St. Rec. Vol. 1 of 8, Application for Post-Conviction Relief, 3/17/16 (dated 3/14/16).

[21]St. Rec. Vol. 1 of 8, Supplemental Application for Post-Conviction Relief, 6/16/16.

[22]St. Rec. Vol. 1 of 8, Trial Court Ruling, 11/18/16.

The Louisiana Fourth Circuit denied Simms's related writ application, finding no error in the trial court's ruling.[23]

In his writ application to the Louisiana Supreme Court, Simms sought review <u>only</u> of the denial of relief on the ineffective assistance of trial and appellate counsel claims.[24] On May 18, 2018, the Louisiana Supreme Court denied the writ application, holding that Simms failed to show ineffective assistance under <u>Strickland</u>.[25]

## III.    FEDERAL HABEAS PETITION

As outlined previously, Simms filed an amended petition for federal habeas corpus relief in which he asserts his three exhausted claims included in the amended petition:[26] (1) The state trial court erred when it failed to grant the motion for mistrial based on improper argument by the State during rebuttal argument. (2) He received ineffective assistance of trial counsel when counsel failed to (a) call important witnesses to testify at trial; (b) move for a mistrial based on the prosecutor's improper reference to other crimes; (c) contemporaneously object to the trial court's failure to rule on an outstanding motion for mistrial; and (d) move for severance of the charges. (3) He received ineffective assistance of counsel on appeal because counsel failed to assert viable,

---

[23]St. Rec. Vol. 8 of 8, 4th Cir. Order, 2016-K-1300, 1/27/17; 4th Cir. Writ Application, 2016-K-1300, 12/20/16 (dated 12/13/16).

[24]St. Rec. Vol. 8 of 8, La. S. Ct. Writ Application, 17-KH-378, p.4, 3/1/17 (dated 2/14/17).

[25]<u>State ex rel. Simms v. State</u>, 242 So.3d 1223 (La. 2018); St. Rec. Vol. 8 of 8, La. S. Ct. Order, 2017-KH-0378, 5/18/18.

[26]Rec. Doc. No. 15.

meritorious issues on appeal and failed to assert insufficient evidence to support the felon in possession conviction.

In its response in initial opposition to Simms's federal petition, the State asserted that these claims are meritless.[27] The State has not supplemented its response since the amended petition was filed.

IV.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[28] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Simms's petition, which, for reasons discussed below, is deemed filed in a federal court on July 17, 2018.[29] The threshold questions in habeas review under the amended statute

---

[27]Rec. Doc. No. 14.

[28]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[29]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The clerk filed Simms's petition on July 17, 2018, when it was received. The official stamp of the prison legal programs department reflects that Simms presented the petition to prison officials on July 17, 2018, for electronic mailing to federal court. Rec. Doc. No. 1-3 at p. 69.

are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419–20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes that Simms's petition was timely and does not assert a state court-imposed procedural bar to review by this federal court. The State's exhaustion defense already has been resolved. I will therefore review the remaining claims on the merits.

V.    STANDARDS OF A MERITS REVIEW OF THE REMAINING CLAIMS

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings. Nobles, 127 F.3d at 419–20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280–81 (5th Cir. 2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001) (brackets in original); Hill, 210 F.3d at 485. The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412–13 (2000); Penry, 532 U.S. 782, 792–93 (2001) (citing Williams, 529 U.S. at 405–08); Hill, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." White v. Woodall, 572 U.S. 415, 427 (2014) (citing Harrington v. Richter, 562 U.S. 86, 103 (2011); Knowles v. Mirzayance, 556 U.S. 111,

122 (2009)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" Id. at 426 (quoting Yarborough v. Alvarado, 541 U.S. 652, 666 (2004)).

"'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24–25 (2002)) (citations omitted; brackets in original). Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24–25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

## VI.    DENIAL OF THE MOTION FOR MISTRIAL (AMENDED CLAIM NO. 1)

Simms alleges that the state trial court erred when it denied his motion for mistrial following the prosecutor's comment during closing argument, which he contends necessarily focused the jury's attention on his failure to testify. He also asserts that the appropriate remedy, in addition to sustaining the objection, was for the state trial court to grant a mistrial under La. Code Crim. P. 770 et seq. Simms challenges the following

statement made by the prosecutor during rebuttal argument, challenging defense counsel's statements that the victim was mistaken and Simms was innocent:[30]

> [. . .] The only person that came in here and told you that [the victim was mistaken] is this defense attorney. [. . .] Now, he wants to stand up here and talk about what he's saying what he wants to talk about. And you know what's real funny? From the beginning of this trial throughout this entire trial he hasn't spoken once about why in the world . . .

Simms' counsel interrupted and successfully objected. The state trial court reminded the prosecutor that the defense had no burden of proof and did not have to call witnesses.[31] Simms's counsel then moved for a mistrial which did not evoke a verbal response from the court, and the prosecutor continued with his argument.

Simms's counsel later filed two, unsuccessful motions for new trial asserting in part that the state trial court erred when it failed to grant the mistrial based on the prosecutor's foregoing reference to Simms's failure to testify.[32]

On direct appeal, Simms's appointed counsel asserted that the state trial court erred in failing to grant the mistrial. The Louisiana Fourth Circuit held that Simms failed to preserve for appeal any challenge to the state trial court's failure to rule on the motion for mistrial and failed sufficiently to preserve for review a particular basis for the objection to the prosecutor's comments or basis for the motion for mistrial. The court

---

[30]St. Rec. Vol. 7 of 8, Trial Transcript (continued), p. 276, 8/21/12.

[31]Id. at p. 277.

[32]St. Rec. Vol. 1 of 8, Motion for New Trial, 11/5/12; Motion for New Trial, 12/3/12; Minute Entry, 12/12/12.

recognized, however, that Simms generally preserved his challenge to the denial of his

Fifth Amendment right by the prosecutor's alleged comment on his silence.

Consequently, the Louisiana Fourth Circuit addressed the claim in general terms

under Louisiana law and held that the challenged comment did not violate Simms's right

to remain silent. The court found that the comment was addressed to defense counsel, <u>not</u>

defendant, rendering no basis for a mistrial and even if improper, the comment did not

contribute to the verdict. This was the last reasoned state court opinion on the claim. <u>See</u>

<u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018) ("We hold that the federal court should

'look through' the unexplained decision to the last related state-court decision that does

provide a relevant rationale . . . then presume that the unexplained decision adopted the

same reasoning."); <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 802 (1991) (when the last state

court judgment does not indicate whether it is based on procedural default, the federal

court will presume that the state court has relied upon the same grounds as the last

reasoned state court opinion.)

As an initial matter, to the extent Simms asserts that the state trial court erred in

failing to rule on the motion or otherwise comply with state law, that is not a cognizable

issue for this federal habeas court. A federal court does "not sit as [a] 'super' state

supreme court in a habeas corpus proceeding to review errors under state law."

<u>Wilkerson v. Whitley</u>, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted). Errors made

under state law will not warrant federal habeas review. <u>Swarthout v. Cooke</u>, 562 U.S.

216, 219 (2011); Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); see also Hogue v. Johnson, 131 F.3d 466, 506 (5th Cir. 1997) (a disagreement as to state law is not cognizable on federal habeas review). The United States Fifth Circuit has specifically addressed state court error involving mistrials:

> Even if the court's refusal to declare a mistrial was a violation of Louisiana law, we, as a federal habeas court, are without authority to correct a simple misapplication of state law; we may intervene only to correct errors of constitutional significance.

Smith v. Whitley, No. 93-03208, 1994 WL 83777, at *1 (5th Cir. Mar. 3, 1994). Thus, this court must not consider whether Louisiana law would have required the granting of a mistrial, nor is it required to determine whether the state appellate court should have found that an error occurred under state law.

Instead, this court must focus on Simms's claim that the prosecutor's comment violated his right against self-incrimination under the Fifth Amendment. This presents the court with a mixed question of law and fact. Accord Montoya v. Collins, 955 F.2d 279, 286 (5th Cir. 1992). Under the AEDPA, the court must determine whether the state court's denial of relief was contrary to or an unreasonable application of federal law.

A prosecutor's comments on a defendant's exercise of his Fifth Amendment right not to testify are constitutionally impermissible. Griffin v. California, 380 U.S. 609, 615 (1965). However, a prosecutor's remarks must be considered in the context of the

situation in which they were made. United States v. Delgado, 672 F.3d 320, 335 (5th Cir. 2012); Hernandez v. Thaler, 440 F. App'x 409, 416 (5th Cir. 2011). To determine whether a petitioner's Fifth Amendment rights were violated, the proper inquiry is to determine (1) whether the prosecutor's manifest intent was to comment on the defendant's silence; or (2) whether the character of the remark was such that the jury would naturally and necessarily construe it as a comment on the defendant's silence. Cotton v. Cockrell, 343 F.3d 746, 751 (5th Cir. 2003); see also, United States v. Grosz, 76 F.3d 1318, 1326 (5th Cir. 1996) (quoting United States v. Collins, 972 F.2d 1385, 1406 (5th Cir. 1992)).

No manifest intent to comment on a defendant's failure to testify occurs if there is another "equally plausible" explanation for a prosecutor's remarks. Lee v. Michael, 476 F. App'x 29, 31 (5th Cir. 2012) (quoting Collins, 972 F.2d at 1406); Grosz, 76 F.3d at 1326. As for the character of the remark, "the question is not whether the jury possibly or even probably would view the challenged remark in this manner, but whether the jury necessarily would have done so." (citation, emphasis, and internal quotation marks omitted) Grosz, 76 F.3d at 1326; Lee, 476 F. App'x at 31. Moreover, the Fifth Amendment is not violated when the comments are made in "a fair response to a claim made by defendant or his counsel." United States v. Robinson, 485 U.S. 25, 32 (1988). In assessing the meaning and impact of a prosecutor's comments, the Supreme Court cautions that "a court should not lightly infer that a prosecutor intends an ambiguous

remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." Donnelly v. DeChristoforo, 416 U.S. 637, 647 (1974). In this case, the comments made by the prosecutor during closing arguments were not in violation of the Fifth Amendment as described in Griffin.

I recognize that defense counsel's objection was sustained by the state trial court. This was done, however, without defense counsel providing a basis for the objection or the state trial judge providing reasons for its ruling. Even assuming that the Fifth Amendment was an unspoken basis for the objection and the ruling, Simms has not established a violation of his Fifth Amendment rights.

The State's closing argument establishes that the prosecutor was attempting to demonstrate that there had been no evidence presented at trial to support defense counsel's representation that the victim was incorrect in her identification of Simms as the perpetrator and that Simms was innocent. A plain reading of the words used by the prosecutor, in the context in which they were used, indicates that the comment was a general reference to defense counsel's misstatement of the evidence, not a direct comment on Simms's failure to testify. This conclusion is bolstered by the rest of the prosecutor's rebuttal statement, which admonished defense counsel's attempt to testify and misstate the trial testimony.

The record does not establish that the jury necessarily took the prosecutor's remarks as a reference to Simms's own failure to testify or that it had any impact on the jury's verdict in light of the substantial evidence of Simms's guilt. Simms has not established that a <u>Griffin</u> error occurred in violation of his Fifth Amendment rights. <u>Gongora v. Thaler</u>, 710 F.3d 267, 274 (5th Cir. 2013) (citing <u>Harrington</u>, 562 U.S. at 101-02); <u>see</u> <u>Hernandez</u>, 440 F. App'x at 417 ("In this case, however, one could plausibly interpret the prosecutor's remarks as referring to the lack of corroboration for Hernandez's story in the testimony of other actual and potential witnesses.").

Simms has failed to establish that the denial of relief on this claim was contrary to or an unreasonable application of federal law. He is not entitled to relief on this claim.

## VII.    EFFECTIVE ASSISTANCE OF COUNSEL (AMENDED CLAIM NOS. 2 & 3)

Simms alleges that he was denied effective assistance when his trial counsel failed to (a) call important witnesses to testify at trial; (b) move for a mistrial based on the prosecutor's improper reference to other crimes; (c) contemporaneously object to the trial court's failure to rule on an outstanding motion for mistrial; and (d) move for severance of the charges. Simms also alleges that his appellate counsel provided ineffective assistance because counsel failed to assert certain viable and meritorious arguments on appeal, including insufficient evidence to support the felon in possession conviction.

Simms asserted these claims in his state court post-conviction application, and the state courts denied relief, finding that Simms failed to satisfy the <u>Strickland</u> standards.

In <u>Strickland</u>, the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. <u>Strickland</u>, 466 U.S. at 687. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." <u>Id.</u> at 688. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694; <u>United States v. Kimler</u>, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive <u>Strickland</u> standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. <u>Kimler</u>, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' But it is not enough, under <u>Strickland</u>, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) <u>Motley v. Collins</u>, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting <u>Strickland</u>, 466 U.S. at 693); <u>see</u> <u>Harrington</u>, 562 U.S. at 112 (<u>Strickland</u> requires a "substantial" likelihood of a different result, not just a "conceivable" one.)

On habeas review, the United States Supreme Court has clarified that, under <u>Strickland</u>, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best

practices or most common custom." Harrington, 562 U.S. at 105 (quoting Strickland, 466

U.S. at 690). The Harrington Court went on to recognize the high level of deference

owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both "highly
> deferential," and when the two apply in tandem, review is "doubly" so.
> The Strickland standard is a general one, so the range of reasonable
> applications is substantial. Federal habeas courts must guard against the
> danger of equating unreasonableness under Strickland with
> unreasonableness under § 2254(d). When § 2254(d) applies, the question
> is not whether counsel's actions were reasonable. The question is whether
> there is any reasonable argument that counsel satisfied Strickland's
> deferential standard.

Id. at 105 (citations omitted).

Thus, scrutiny of counsel's performance under Section 2254(d) is "'doubly

deferential.'" Cullen v. Pinholster, 563 U.S. 170, 190 (2011) (quoting Knowles, 556 U.S.

at 123). This court must therefore apply the "strong presumption" that counsel's strategy

and defense tactics fall "within the wide range of reasonable professional assistance."

Strickland, 466 U.S. at 689.

Federal habeas courts presume that litigation strategy is objectively reasonable

unless clearly proven otherwise by the petitioner. Id.; Geiger v. Cain, 540 F.3d 303, 309

(5th Cir. 2008); Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999). In assessing

counsel's performance, a federal habeas court must make every effort to eliminate the

distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged

conduct, and to evaluate the conduct from counsel's perspective at the time of trial.

Strickland, 466 U.S. at 689; Neal, 286 F.3d at 236–37; Clark v. Johnson, 227 F.3d 273, 282–83 (5th Cir. 2000). Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997); Mann v. Scott, 41 F.3d 968, 983–84 (5th Cir. 1994)).

The issue of ineffective assistance of counsel is a mixed question of law and fact. Strickland, 466 U.S. at 698; Clark v. Thaler, 673 F.3d 410, 416 (5th Cir. 2012); Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010). Thus, under the AEDPA, this court must determine whether the state courts' denial of relief was contrary to or an unreasonable application of Supreme Court precedent.

A.    TRIAL COUNSEL

Simms has alleged that he did not receive effective assistance from his trial counsel in several ways, all of which the state courts denied as meritless under Strickland.

1.    Call Witnesses

Simms claims that his counsel failed to call several witnesses whom he believes were critical to his defense. He claims that his counsel should have interviewed or called Denise Wells because she was the person who identified him to police. Simms further claims that counsel erred by failing to call his alibi witness and girlfriend, Mariah Taylor, to the stand after subpoenaing her. Finally, Simms contends that his counsel should have

called Officer Carlos Amador to the stand after he too was subpoenaed, because Amador spoke to the victim after the alleged crime.

The state trial court denied relief under <u>Strickland</u>, finding that Simms failed to present any support for his contention that counsel failed to interview Wells or that any information from Wells would have been beneficial to the defense. The court noted that Wells did not identify Simms as the perpetrator but simply told police that the description given by the victim matched Simms. In addition, the court noted that the identification on which Simms was arrested was not based on Wells's statements but the fact that the victim saw Simms walking down the street and called police.

The state trial court also attributed counsel's decision not to call the subpoenaed witnesses, Taylor and Officer Amador, to reasonable strategy based on the evolving evidence at trial. The court found that counsel was not ineffective for failing to call Taylor to the stand in light of the pretrial hearing in which she indicated that, if she was called to the stand, she would invoke her Fifth Amendment privilege. Her wariness to testify apparently was based on concerns of perjury and other potential criminal charges based on her prior statements and a recorded telephone call between Taylor and Simms in which they discussed her recovering and hiding something he had hidden to prevent discovery by the police.

As for Officer Amador, the state trial court noted that Simms failed to indicate the nature of the testimony he anticipated from Amador. Simms also failed to establish how

counsel's decision not to call the officer, who initially responded to the victim's 9-1-1 call, altered the outcome of the trial.

The Louisiana Supreme Court denied Simms's related writ application also citing to <u>Strickland</u> without further comment.

It is <u>not</u> enough for Simms to allege that his counsel should have called these defense witnesses. "'Failure to present [evidence does] not constitute 'deficient' performance within the meaning of <u>Strickland</u> if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.'" <u>Williams v. Cockrell</u>, 31 F. App'x 832, 2002 WL 180359, at *3 (5th Cir. Jan. 4, 2002) (quoting <u>Williams v. Cain</u>, 125 F.3d 269, 278 (5th Cir. 1997)). Moreover, "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'" <u>Graves v. Cockrell</u>, 351 F.3d 143, 156 (5th Cir. 2003) (quoting <u>Buckelew v. United States</u>, 575 F.2d 515, 521 (5th Cir. 1978)); <u>Bray v. Quarterman</u>, 265 F. App'x 296, 298 (5th Cir. 2008). To prevail on such a claim, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony and show that the testimony would have been favorable to a particular defense. <u>Day v. Quarterman</u>, 566 F.3d 527, 538 (5th Cir. 2009) (citing <u>Bray</u>, 265 F. App'x at 298).

Simms has identified three potential witnesses but, as resolved by the state courts, has not met his burden of showing deficient performance by his counsel. Simms has not identified or established the substance of Wells's testimony or how her testimony could have benefitted the defense or altered the outcome of the trial. As Simms recognizes in his pleadings, Wells told police that the description provided by the witness did not match the description of anyone living in her building, although it resembled Simms who occasionally visited the building.

This information was brought before the jury through the limited testimony of the investigating officers and the police reports. The state trial court had extensive discussions with counsel before the second day of trial about the fact that Wells would not be called to testify and, because of potential hearsay challenges, would not be referenced by the witnesses except to note that she gave a name to police.[33] Wells's identification of Simms was not the impetus behind Simms's arrest. He was not arrested until the victim located him and contacted police with his whereabouts. It is unclear how Wells's testimony, which likely would have confirmed that Simms matched the perpetrator's description, could have been beneficial to the defense. Simms has not established deficient performance on the part of his counsel for failing to call Wells at trial.

---

[33]St. Rec. Vol. 6 of 8, Trial Transcript, pp. 38–42, 8/21/12.

The second witness, Taylor, who was subpoenaed by Simms's counsel, already had advised the state trial court and counsel that she was not willing to testify. After a sealed hearing on her potential testimony and on the advice of her counsel, Taylor indicated that she would invoke her Fifth Amendment privilege.[34] Simms's counsel could not have compelled Taylor to give testimony even under subpoena. It was reasonable strategy for defense counsel to decide that Taylor's appearance before the jury only for her to invoke the Fifth Amendment could have drawn more attention to the allegation that Simms and Taylor hid the weapon and other evidence from police.

Similarly, Simms has failed to indicate what, if any, testimony from Officer Amador would have benefitted the defense or altered the outcome of trial. Simms claims that Amador was key to discrediting the victim's initial identification. Simms does not indicate how Amador's testimony would have established this assertion any more than the evidence already relied on by his counsel, including the testimony of the victim and her mother. Failure to submit cumulative evidence or duplicative testimony generally does not amount to ineffective assistance of counsel. Richards v. Quarterman, 566 F.3d 553, 569 (5th Cir. 2009); Coble v. Quarterman, 496 F.3d 430, 436 (5th Cir.2007) (citing Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984) ("Counsel's decision not to present cumulative testimony does not constitute ineffective assistance.")). It is not for this court to speculate as to his counsel's motive. Simms's conclusory argument has not met his

---

[34]Id. at 28–37, 43–44.

burden of establishing how Amador's testimony would have benefitted the defense or that his counsel's actions were deficient or prejudicial under <u>Strickland</u>. <u>Green v. Johnson</u>, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.").

For the foregoing reasons, Simms has failed to establish that the state courts' denial of relief was contrary to or an unreasonable application of <u>Strickland</u>. He is not entitled to relief on this claim.

2.    <u>Mistrial Based on Other Crimes</u>

Simms asserts that his counsel was ineffective when he failed to move for a mistrial when the prosecutor questioned his uncle, Sidney Simms, about the number of murders Simms had perpetrated. Simms's claim is not factually supported because he has not provided an accurate summary of the record and his counsel in fact moved for a mistrial following the question at issue.

On questioning by defense counsel over the objections of the prosecutor, Sidney Simms testified for the defense about the violent criminal activity occurring on Annunciation Street in New Orleans, an area frequented by Simms and around the corner

from the armed robbery location on Austerlitz Street.[35] On cross-examination, the prosecutor had the following exchange with Sidney Simms:[36]

Q    Now, there's been questions asked over and over, almost every witness, about all of these shootings in the 3800 block of Annunciation; is that right?

A    Yes, sir.

Q    So there's a lot of shootings in the 38 and the 3900 block of Annunciation Street, right?

A    Yes, sir.

Q    Over the course of two years it's been a bunch of shootings, right?

A    Bunch of killings, not just shootings.

Q    Killings. Tell me something, how many of those killings have been perpetrated by this man right here?

At that point, defense counsel objected. The state trial court sustained the objection, noting that Simms was not on trial for his prior discharge of a weapon conviction.[37] Following the close of the defense case, Simms's counsel moved for a mistrial based on the question asked to Sidney Simms. The state trial court denied the motion for mistrial and instructed the jury to ignore the repeated references by both sides to the shootings, other than the parties' stipulation (relevant to the possession fo firearm charge) that Simms was previously convicted of discharging a firearm.[38] The state trial

---

[35]St. Rec. Vol. 7 of 8, Trial Transcript (continued), pp. 239–43 (Sidney Simms), 8/21/12.

[36]Id. at pp. 244–45.

[37]Id.

[38]Id. at 259–60.

court also later denied Simms's motions for new trial based on the denial of the motion for mistrial on this ground.[39]

In a footnote on direct appeal, the Louisiana Fourth Circuit generally referenced without comment that the exchange between the prosecutor and Sidney Simms had occurred and that the unsuccessful motion followed.[40] On post-conviction review, the state trial court found the claim meritless because the Louisiana Fourth Circuit did not find error on its errors patent review.[41] The court also noted that, contrary to Simms's argument, his counsel had objected and moved for the mistrial.

Simms's ineffective assistance of counsel claim is factually unsupported and therefore legally meritless. As noted by the state courts, his counsel objected, moved for mistrial and later moved for new trial, all based on the prosecutor's question to Sidney Simms about Simms's role in the killings on Annunciation Street. The fact that counsel's efforts to challenge the prosecutor's comments were not successful does not render counsel ineffective. See Martinez v. Dretke, 99 F. App'x 538, 543 (5th Cir. 2004) ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel."); Baker v. United States, No. 07cr435, 2011 WL 3841690, at *13 (E.D. Va. Aug. 30, 2011) (". . . the record shows [counsel] effectively advocated on Petitioner's

---

[39]St. Rec. Vol. 1 of 8, Minute Entry, 12/12/12; Motion for New Trial, 12/3/12.

[40]Simms, 143 So.3d at 1268 n.9; St. Rec. Vol. 6 of 8, 4th Cir. Opinion, 2013-KA-0575, pp. 16–17 n.9, 6/18/14.

[41]St. Rec. Vol. 1 of 8, Trial Court Ruling, 11/18/16.

behalf by making a timely, reasonable objection . . . [t]hus, counsel's actions were effective notwithstanding their lack of success . . . .").

Simms has not established that his counsel provided ineffective assistance. The state courts' denial of relief was not contrary to or an unreasonable application of Strickland. He is not entitled to relief on this claim.

3.    Objection to No Ruling by the State Trial Court

Simms claims that his counsel was ineffective for failing to object when the state trial court did not rule on the motion for mistrial made during closing arguments when the prosecutor allegedly commented on Simms's failure to testify. The state courts denied relief on this claim under Strickland, with the state trial court specifically noting the Louisiana Fourth Circuit's holding that the prosecutor's comment was not improper and did not prejudice the defense.

Simms's first federal habeas corpus claim that the prosecutor's comment violated his Fifth Amendment right to remain silent and not testify is addressed above. As discussed, Simms's counsel objected when the prosecutor commented to the jury that defense counsel's closing arguments were not supported by evidence. The state trial court sustained defense counsel's objection but did not verbalize a ruling on defense counsel's motion for mistrial.

On appeal, despite the lack of a ruling, the Louisiana Fourth Circuit addressed Simms's claim, finding that counsel's motion for mistrial was sufficient to preserve the

issue for appellate review. The Louisiana Fourth Circuit held that the prosecutor's comment referenced the lack of evidence to support the assertions made by Simms's counsel and was not a direct comment on Simms's failure to testify. The state trial court and the higher state courts also made clear in the later, post-conviction rulings that there were no grounds for a mistrial and no constitutional violation arising from the prosecutor's comments.

Thus, Simms has failed to demonstrate that his counsel's failure to object to the state trial court's failure to rule resulted in any prejudice. Simms was provided full review in the state courts of his challenge to the prosecutor's comment. In addition, this court has reviewed Simms's claim challenging the prosecutor's comment and, like the state courts, resolved that the reference made by the prosecutor during closing arguments was not in violation of Simms's Fifth Amendment right as described in Griffin, and the state courts' denial of relief was not contrary to or an unreasonable application of federal law.

Based on these findings and those of the state courts, Simms cannot demonstrate that his counsel was ineffective when he failed to compel a verbal ruling on the motion for mistrial. Even if counsel sought a clarification from the state trial court at the time, it would not have changed the state courts' or this court's finding that there was no violation of his Fifth Amendment right under Griffin.

Simms was not prejudiced by his counsel's failure to seek a ruling from the state trial court on the motion for mistrial, which ultimately was deemed meritless. Accord Smith v. Puckett, 907 F.2d 581, 585 n.6 (5th Cir.1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); Koch v. Puckett, 907 F.2d 524, 530 (5th Cir.1990) (concluding that "counsel is not required to make futile motions or objections."). The state courts' denial of relief on this claim was not contrary to or an unreasonable application of Strickland. Simms is not entitled to relief.

4.    Motion for Severance

Simms's pleadings, broadly construed, assert that his counsel should have moved to sever the charges because the State had no weapon in evidence to prove that he was in possession of a weapon and the jury would be confused by the details of the crimes. The state courts denied relief on this claim, finding no basis for the charges to have been severed and that counsel's performance was not deficient under Strickland.

Under Louisiana law, ". . . the district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute." La. Code Crim. P. art. 61. The prosecutor's decision appropriately to join criminal charges in a bill of information is not subject to objection by the defense. See State v. Brooks, 541 So.2d 801, 810 (La. 1989) (citing La. Code Crim. P. art. 61 as providing broad discretion to the district attorney in determining

whether to sever counts in an indictment); <u>State v. Burnett</u>, No. 2007-KA-2523, 2008 WL 2064975, at *3–4 (La. App. 1st Cir. 2008) (unpublished) (the district attorney has the discretion to prosecute offenses separately or in aggregate) (citing <u>State v. Joles</u>, 492 So.2d 490 (La. 1986)) (addressing joinder of theft counts). Thus, unless Simms shows that the charges were improperly joined, he fails to establish that his counsel erred in not moving to sever the counts.

Louisiana law provides for the joinder of criminal acts in one bill of information or indictment under certain circumstances:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.

La. Code Crim. P. art. 493.

In addition, La. Code Crim. P. art. 493.2 permits joinder of offenses based on the statutory punishment:

> Notwithstanding the provisions of Article 493, offenses in which punishment is necessarily confinement at hard labor may be charged in the same indictment or information with offenses in which the punishment may be confinement at hard labor, provided that the joined offenses are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

33

La. Code Crim. P. art. 495.1, however, provides that "[i]f it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires."

Simms has not established that joinder of his felony charges was error that should have prompted counsel to file a motion to sever. A felony, under Louisiana law, "is any crime for which the offender may be sentenced to death or imprisonment at hard labor." La. Rev. Stat. § 14:2. Louisiana law provides that those convicted of armed robbery and as a felon in possession of a firearm "shall" be punished at hard labor. La. Rev. Stat. §§14:64, 14:951. In addition, felonies necessarily punished by confinement at hard labor are to be tried by a twelve (12) person jury. La. Code Crim. P. art. 782. Thus, Simms properly was charged in one bill of information with two felonies that were triable by jury and for which he was subject to punishment at hard labor. Both of his charges arose from the same event during which he was in possession of a gun during a robbery. Simms, therefore, has not demonstrated a reason for his counsel to have moved as a matter of law to sever counts properly charged in the same bill of information.

Further, in accord with La. Code Crim. P. art. 495.1, "there is no prejudice and severance is not required if the facts of each offense are not complex, and there is little likelihood that the jury will be confused by the evidence of more than one crime." State v. Lewis, 557 So.2d 980, 984 (La. App. 4th Cir. 1990). In determining whether joinder

34

of two or more offenses would result in prejudice, Louisiana courts consider the following factors:

> (1) whether the jury would be confused by the various counts; (2) whether the jury would be able to segregate the various charges and evidence; (3) whether the defendant would be confounded in presenting his various defenses; (4) whether the crimes charged would be used by the jury to infer a criminal disposition; and (5) whether, considering the nature of the charges, the charging of several crimes would make the jury hostile.

State v. Lewis, 736 So.2d 1004, 1015 (La. App. 4th Cir. 1999).

Simms has not established that the jury was impacted in any of these ways by the evidence. Simms claims that the lack of a weapon in evidence should have prompted a severance of the charges. However, the lack of a weapon in evidence allowed his counsel to argue to the jury that there was mistaken identity, no armed robbery and no possession of a weapon by a felon. As determined by the state trial court, the charges arose from the same incident against one victim. The jury was fully instructed on the individual elements required to prove each charge. Simms has not shown that the jury was unable to understand and evaluate the elements of each offense, inferred a criminal disposition or was hostile as a result of the joinder of the offenses.

Having reviewed the record in its entirety, I find that Simms was not prejudiced simply because the offenses were tried together. Each of the charges against him arose from the same act. The facts of the offenses were not complex or confusing. Simms has made no showing of undue prejudice that would have warranted or required severance

under Louisiana law. Simms, therefore, has shown no reason for his counsel to have moved the state trial court to sever the charges. Counsel does not act deficiently in failing to urge a meritless argument. See Smith, 907 F.2d at 585 n.6; Koch, 907 F.2d at 530. The state courts' denial of relief on this issue was not contrary to or an unreasonable application of Strickland. Simms is not entitled to relief on this claim.

B.    APPELLATE COUNSEL

Simms argues that his appellate counsel was ineffective because he failed to pursue claims that were included in post-conviction motions before the state trial court; specifically, a challenge to the ex parte hearing on Taylor's assertion of the Fifth Amendment privilege and the state trial court's denial of the related motion to continue trial. He also contends that appellate counsel should have challenged the sufficiency of the evidence in the multiple offender proceeding and to support the felon in possession conviction.

Criminal defendants are entitled to effective assistance of counsel in their first appeal of right. Evitts v. Lucey, 469 U.S. 387, 394 (1985). The Strickland standard for judging performance of counsel also applies to claims of ineffective appellate counsel. Smith v. Robbins, 528 U.S. 259, 285 (2000); Goodwin v. Johnson, 132 F.3d 162, 170 (5th Cir. 1997). To prevail on a claim that appellate counsel was constitutionally ineffective, a petitioner must show that his appellate counsel unreasonably failed to discover and assert a non-frivolous issue and establish a reasonable probability that he

36

would have prevailed on this issue on appeal but for his counsel's deficient representation. Briseno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); Smith, 528 U.S. at 285–86.

Effective appellate counsel are not required to assert every non-frivolous available ground for appeal. Green, 160 F.3d at 1043 (citing Evitts, 469 U.S. at 394). On the contrary, the United States Supreme Court has long recognized that appellate counsel filing a merits brief need not and should not argue every non-frivolous claim; instead, appellate counsel may legitimately select from among them in the exercise of professional judgment to maximize the likelihood of success on appeal. Jones v. Barnes, 463 U.S. 745, 751–52 (1983). Appellate counsel has discretion to exclude even a non-frivolous issue if that issue was unlikely to prevail. See Anderson v. Quarterman, 204 F. App'x 402, 410 (5th Cir. 2006) ("The issues that Anderson argues his counsel should have raised on direct appeal . . . lack merit. As such, failure to raise these issues did not prejudice Anderson."); Penson v. Ohio, 488 U.S. 75, 83–84 (1988) (noting that courts have refused to find counsel ineffective when the proposed appellate issues are meritless); Kossie v. Thaler, 423 F. App'x 434, 437 (5th Cir. 2011) (recognizing the Supreme Court's basic rule that the presumption that appellate counsel was effective will be overcome only when the unasserted claims are stronger than those that were in fact raised). Thus, because one of appellate counsel's important duties is to focus on those arguments that are most likely to succeed, counsel will not be found constitutionally

ineffective for failure to raise every conceivable issue. Smith, 528 U.S. at 288; Jones, 463 U.S. at 754.

1.   Hearing on Taylor's Fifth Amendment Privilege

Simms contends that appellate counsel should have challenged the ex parte hearing related to Taylor's invocation of her Fifth Amendment privilege and the denial of the related motion to continue trial. As background, Taylor, who was 17 years old, was interviewed by the state trial court in a sealed pre-trial proceeding to determine the appropriateness of her intent to invoke her Fifth Amendment privilege as to her questioning by police and her affidavit signed on June 29, 2012.[42] Before the start of the second day of trial, Taylor's attorney appeared before the state trial court to discuss Taylor's assertion of her Fifth Amendment privilege as to some questions and possibly not others, dependent on the State's intentions to pursue perjury or other charges against her.[43] The state trial court held that if Taylor were called to testify, her invocation of the privilege would be evaluated with each question and her counsel could consult with her regarding her Fifth Amendment privilege based on her exposure to risk of prosecution.

Following the conviction, Simms's counsel filed a motion for new trial and for post-verdict judgment of acquittal, which included a claim that the state trial court erred in conducting Taylor's hearing ex parte, not allowing her affidavit to be shown to the

---

[42]See St. Rec. Vol. 6 of 8, Trial Transcript, pp. 32–33, 8/21/12; St. Rec. Vol. 3 of 8, Mariah Taylor's Affidavit, 6/29/12.

[43]St. Rec. Vol. 6 of 8, Trial Transcript, pp. 28–37, 8/21/12.

jury as part of his alibi defense and not continuing the trial to allow the defense to reevaluate its alibi defense based on Taylor's testimony.The state trial court denied the motion on December 12, 2012, and the record does not contain a transcript of that hearing.[44] On post-conviction review, the state courts denied relief under Strickland.

My research has located no prohibition to a court's ex parte examination of a witness to evaluate the protections of the Fifth Amendment privilege. Ex parte and in camera proceedings for determining the applicability of the Fifth Amendment privilege in a criminal matter often fall within the ambit of the "rare" instances when such proceedings are appropriate. United State v. Farha, No. 11cr115, 2012 WL 12964913, at *2 (M.D. Fla. Sep. 27, 2012) (citing e.g. United States v. Melchor Moreno, 536 F.2d 1042, 1049 (5th Cir. 1976) (Fifth Amendment claims by witness in criminal case) and United States v. Argomaniz, 925 F.2d 1349, 1355 (11th Cir. 1991) (taxpayer's Fifth Amendment claim in a civil enforcement action)); see also Accord v. Saenz, No. 09-2587, 2009 WL 2870009, at *9 (S.D. Tex. Aug. 28, 2009) (ex parte hearing held in abundance of caution on applicability of arrestee's Fifth Amendment privilege).

In addition, the state trial court did not prevent Simms from calling Taylor to the stand or from questioning her about the affidavit if necessary. The state trial court made clear several times to counsel that Taylor was available to testify, subject to her decision to invoke the Fifth Amendment privilege, and the affidavit could be used as appropriate

---

[44]St. Rec. Vol. 1 of 8, Minute Entry, 12/12/12.

to refresh recollection or for cross-examination of contrary testimony (but not for presentation to the jury). Thus, there was no reason for the state trial court to have granted a continuance because Taylor was still available to be called to the stand.

Simms has not established that the claims related to the ex parte hearing or affidavit in the post-conviction motion would have had merit or a likelihood of success on appeal. The arguments in the motion did not establish error by the trial court or the violation of Simms's ability to call Taylor or present his alibi defense. He, therefore, has not met his burden under <u>Strickland</u> of establishing that appellate counsel should have asserted the claims and arguments on appeal.The denial of relief on this claim was not contrary to or an unreasonable application of <u>Strickland</u>. Simms is not entitled to relief.

2.    <u>Sufficiency of the Evidence at the Multiple Bill Hearing</u>

Simms claims that appellate counsel failed to assert that the State did not sustain its burden of proof during the multiple offender hearing. Simms contends that the State should have been required to produce a <u>Boykin</u> transcript from the prior conviction to meet its burden. Simms has not shown that his appellate counsel failed to argue a meritorious claim.

Because this claim is brought to this court as a question of effective assistance of appellate counsel, <u>Strickland</u> supplies the standard of review, <u>not</u> <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979), which was relied on by Simms in his pleadings. To establish insufficient evidence under <u>Jackson</u>, a petitioner must show that, after viewing the

40

evidence in the light most favorable to the prosecution, a rational trier of fact could not find beyond a reasonable doubt that petitioner was a multiple offender. See George v. Cain, No. 08-5022, 2011 WL 1832823, at *5 (E.D. La. May 13, 2011) (Vance, J.) (applying the Jackson standard to sufficiency of the evidence at a multiple offender proceeding). Even if the court were to consider Jackson in terms of whether appellate counsel was deficient, Simms has failed to meet that burden.

In addressing this claim, the state trial court generally indicated that Louisiana law only required that the prior convictions be proven by any competent evidence and did not require presentation of the prior Boykin transcript.[45] The court found that the State submitted expert testimony as to the fingerprint evidence, certified copies of the arrest forms and a certified packet from Jefferson Parish showing a prior felony conviction, all of which was sufficient and competent to support the multiple offender adjudication.

To establish that a defendant is a habitual felony offender under La. Rev. Stat. § 15:529.1, the State is required to prove the existence of a prior felony conviction and that the defendant is the same person who was convicted of the prior felony. State v. Shelton, 621 So.2d 769 (La. 1993); State v. Staggers, No. 03-KA-655, 2003 WL 22438958 at *5–6 (La. App. 5th Cir. 2003) (citing State v. Davis, 829 So.2d 554 (La. App. 5th Cir. 2002)); State v. Warfield, No. 37616-KA, 2003 WL 22439586 at *2–3 (La. App. 2d Cir. 2003). Certified copies of court records evidencing prior convictions are sufficient to

---

[45]St. Rec. Vol. 1 of 8, Trial Court Ruling, 11/18/16.

prove the prior conviction. <u>Staggers</u>, 2003 WL 22438958 at *6. The State may introduce certified copies of bills of information, waiver of rights guilty plea forms when available, the docket masters, or minute entries to prove the existence of prior convictions. <u>State v. Wilson</u>, 956 So.2d 41, 52 (La. App. 4th Cir. 2007). Independent proof, such as matching fingerprints or other vital information, is required to show that a defendant is the same person identified in those records. <u>State v. Walker</u>, 795 So.2d 459, 463 (La. App. 5th Cir. 2001), <u>writ denied</u>, 826 So.2d 1115 (La. 2002).

In Simms's case, the State produced the type of evidence that was required to prove his identity and that he had a prior felony conviction in Orleans Parish. As noted by the state trial court, Simms did not challenge this evidence at the hearing or suggest that his prior conviction was improper in some way to require the State to present additional evidence to establish the validity of the prior conviction.

The Louisiana Supreme Court has held that, upon presentation of sufficient proof of identity and the existence of prior convictions, the burden shifts to the defendant to challenge the validity of the underlying convictions:

> If the State meets this burden, the <u>defendant</u> has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State

42

> introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that the defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three <u>Boykin</u> rights.

(emphasis added) <u>Shelton</u>, 621 So.2d at 779 (footnotes omitted).

This additional burden did not shift to the State for presentation of a <u>Boykin</u> transcript because Simms did not challenge the validity of his prior conviction. Thus, the evidence presented by the State establishing Simms's identity through fingerprints and the existence of the prior conviction satisfied the State's burden under Louisiana law. For this reason, there was no basis for Simms's appellate counsel to assert a claim of insufficient evidence on direct appeal. The denial of relief on this claim was not contrary to or an unreasonable application of <u>Strickland</u> or <u>Jackson</u>. Simms is not entitled to relief.

3.    <u>Sufficiency of the Evidence for Felon in Possession</u>

Simms alleges that his appellate counsel was deficient for failing to assert a claim of insufficient evidence related to the felon in possession conviction because the State did not produce a firearm at trial to prove an element of the offense. When his pleadings are broadly construed, he also contends that appellate counsel should have argued that, under Louisiana law, he could not be convicted and sentenced as a felon in possession and have his sentence enhanced as a multiple offender using the same prior conviction.

In denying relief on this claim, the state trial court summarily held that it found sufficient evidence to support the felon in possession conviction. The court found it true that a prior offense could not be used both to support the felon in possession charge and the multiple offender enhancement. However, the court held that Simms's claim was meritless because separate prior convictions were used. His felon in possession charge was based on a prior conviction for discharge of a weapon when it was foreseeable that discharge may result in death or great bodily harm. His multiple offender enhancement was based on his prior conviction for possession with intent to distribute cocaine. For these reasons, appellate counsel was not obligated to assert the meritless claims.

As with the prior claim, whether considered under Strickland or Jackson, Simms's claim fails. Louisiana law makes it "unlawful for any person who has been convicted of . . . any violation of the Uniform Controlled Dangerous Substances Law which is a felony . . . to possess a firearm or carry a concealed weapon." La. Rev. Stat. § 14:95.1.  To support a conviction for possession of a firearm by a convicted felon, the State must establish the following: (1) possession of a firearm; (2) a prior conviction for an enumerated felony; (3) the absence of the ten-year statutory limitation period; and (4) the general intent to commit the crime. State v. Caffrey, 15 So.3d 198 (La. App. 5th Cir. 2009); State v. Ray, 961 So.2d 607 (La. App. 2d Cir. 2007); State v. Robert, 956 So.2d 750 (La. App. 2d Cir. 2007).

Simms challenges only the sufficiency of the evidence to prove the element of possession because no gun was recovered. At trial, the State presented evidence from the victim that Simms had a gun when he robbed her. Witness testimony is sufficient to establish that a defendant possessed a weapon, even if a weapon is not recovered. Haynes v. Cain, No. 11-202, 2014 WL 1028577, at *1 (M.D. La. Mar. 17, 2014) (denying habeas relief on felon in possession charge where no gun was recovered and only witness testimony established that gun was used in attempted murder); see also, United States v. Hernandez, 146 F.3d 30, 32–33 (1st Cir. 1998) (upholding felon in possession of a firearm conviction where no firearm was recovered but eyewitness testified that defendant was armed during a carjacking). Louisiana law does not require that a weapon be recovered or produced at trial to prove a felon in possession charge when credible evidence exists to establish the defendant had a weapon. State v. Jones, __ So.3d __, 2019 WL 959790, at *7 (La. App. 4th Cir. Feb. 27, 2019).

By its verdict, the jury in Simms's case found the victim's testimony credible and sufficient to establish that Simms had a weapon when he robbed her. This type of credibility determination is within the province of the jury and is not to be second-guessed by a reviewing court. Jackson, 443 U.S. at 307. Thus, the evidence demonstrated that, at the time of the robbery, Simms was in possession of a weapon while having been previously convicted of a felony. Based on these findings supported by the record, Simms's appellate counsel had no meritorious insufficient evidence claim to assert.

45

In addition, Simms challenges the double penalty of his concurrent conviction as a felon in possession and the enhancement as a multiple offender. Louisiana law prohibits the State from using the same prior conviction to obtain a felon in possession of a firearm conviction under La. Rev. Stat. § 14:95.1 and to enhance the defendants' sentence under the habitual offender law. State v. Sanders, 337 So.2d 1131 (La. 1976). The Louisiana Supreme Court has further clarified that, while a sentence imposed for a felon in possession conviction may be enhanced under the habitual offender law, the prior felony conviction used as an element in the firearm conviction cannot also be used as a prior felony conviction in the multiple offender bill of information. State v. Baker, 970 So.2d 948, 958 (La. 2007), cert. denied, 555 U.S. 830 (2008).

As determined by the state courts and as the record establishes, Simms's felon in possession charge was based on his prior conviction for discharge of a weapon in Jefferson Parish, as stipulated by counsel before trial.[46] The multiple bill later filed by the State charged Simms as a second felony offender based on his prior conviction for possession with intent to distribute cocaine in Orleans Parish.[47] Thus, contrary to Simms's argument, the State did not rely on the same predicate offense or prior conviction to charge him as a felon in possession and to support the multiple bill. In addition, the multiple offender enhancement was imposed as to Simms's conviction on

---

[46]St. Rec. Vol. 7 of 8, Trial Transcript, p. 23, 8/20/12.

[47]St. Rec. Vol. 1 of 8, Multiple Bill, 8/22/12.

count one, armed robbery, not for the felon in possession count. He has not established any error by his appellate counsel or that he received ineffective assistance of counsel on appeal.

The state courts' denial of relief on these claims was not contrary to or an unreasonable application of Strickland or Jackson. Simms is not entitled to relief on these claims.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Simms's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[48]

---

[48]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

New Orleans, Louisiana, this _____12th_____ day of June, 2019.


_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE